UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| VIRGINIA H. FISHER, ) | Civil Action No.: 4:08-cv-1634-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| SECURITAS SECURITY SERVICES ) | |
| USA, INC., ) | |
| ) | |
| Defendant. ) | |

## I. INTRODUCTION

This is an employment discrimination case based upon race. Plaintiff alleges that Defendant, her former employer, discriminated against her based upon her race and her gender in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, et seq, and discriminated against her based upon her age in violation of Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq.[1] Presently before the Court is Defendant's Motion for Summary Judgment (Document # 24).

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because the Motion for Summary Judgment is a dispositive motion, this Report and Recommendation is entered

---

[1] Plaintiff also asserts a factual allegation of retaliation ("On May 11, 2007, the Defendant retaliated against the Plaintiff for applying for a promotion by terminating the Plaintiff from her employment with the Defendant." Complaint at ¶ 9.) but does not assert a separate cause of action for retaliation and does not respond to Defendant's arguments against a retaliation claim. Thus, the undersigned presumes that Plaintiff is not pursuing a retaliation claim. Furthermore, summary judgment is appropriate on any retaliation claim Plaintiff maybe be bringing because Plaintiff received the promotion for which she applied.

for review by the district judge.

II.   **FACTS**[2]

Defendant Securitas Security Services USA, Inc. (Defendant or Securitas) provides physical security services to Progress Energy's Robinson Nuclear Plant in Hartsville, South Carolina. Spencer Aff. ¶ 3 (attached as Ex. C to Defendant's Motion); Coe Dep. 7:22-23 (attached as Ex. D to Defendant's Motion). The Robinson Nuclear Plant is licensed by the United States Nuclear Regulatory Commission (NRC) and is subject to the conditions and requirements imposed pursuant to the Atomic Energy Act of 1954, 42 U.S.C. § 2011, et seq., and Part 10 of the Code of Federal Regulations. Spencer Aff. ¶ 5. The security program requirements established by the NRC are provided for generally in Title 10 of the Code of Federal Regulations and specifically at 10 C.F.R. Part 73, Appendix B. Spencer Aff. ¶ 4. These security requirements also fall within the purview of the United States Department of Homeland Security. Spencer Aff. ¶ 6.

Plaintiff began working for Burns International Security Services in 1990 as an unarmed watch officer. Plaintiff Dep. 20:2-7, 16-17 (attached as Ex. A to Defendant's Motion). Thereafter, the company changed its name to Securitas Security Services USA, Inc. Plaintiff Dep. 24:2-6. In the mid-1990s, Plaintiff submitted a letter to her supervisor indicating her desire to move from an unarmed to an armed officer position; accordingly, Securitas provided her with instructor training at the shooting range, as well as sent her through a training class for new armed officers. Plaintiff Dep. 24:18-26:1.

After Plaintiff became an armed officer, Securitas identified Plaintiff as someone who could

---

[2]These facts are developed from the evidence submitted by Defendant. Plaintiff did not submit any evidence by way of affidavit, deposition testimony or otherwise.

train new employees and asked that she be a field training officer. Plaintiff Dep. 27:22-23; 29:3-7. To conduct her field training duties, Plaintiff was required to "know all [Securitas'] policies and procedures and about their safeguards" and admits she was "knowledgeable in that area." Plaintiff Dep. 30:3-7, 17-20.

In 2004 and 2005, Securitas approached Plaintiff on several occasions about applying for a promotion to become a back-up sergeant. Plaintiff Dep. 31:2-21; 32:8-10. Plaintiff eventually did apply for and was promoted to back-up sergeant in or around February 2005. Plaintiff Dep. 30:22-24; 31:20-21.

Plaintiff was next promoted to full-time sergeant in 2006. Plaintiff Dep. 33:23-25; 34:13-20; 38:18-20. After Plaintiff expressed interest in the full-time sergeant position but before she was promoted, she was required to go through a ninety day program to receive training for the position. Plaintiff Dep. 33:23-35:4. Plaintiff stated in her deposition that she was not aware of any other applicants for the full-time sergeant position that had to go through such a program. Plaintiff Dep. at 34:24-35:4. However, Plaintiff acknowledged that she needed additional training that she did not possess and which was necessary for her to become a full-time sergeant. Plaintiff Dep. 36:14-17; 38:5-14; 115:12-18. Specifically, Plaintiff acknowledged in her deposition that there were duties required of a full-time sergeant that she had not done before and on which she needed additional training. Plaintiff Dep. 36:5-13. Therefore, before being placed in the full-time sergeant position, Plaintiff was moved to a shift where she could receive the training. Plaintiff Dep. 36:21-23; 27:9-10; 115:19-23. As soon as the training was complete, Plaintiff started in her new role as a full-time sergeant. Plaintiff Dep. 37:18-21; 115:24-116:1.

The full-time sergeant position is an armed position. Plaintiff Dep. 47:3-5; 90:16-21.

Therefore, to remain employed, Plaintiff was required to stay proficient in her range training and successfully pass a weapons qualification each year. Plaintiff Dep. 50:15-16. Plaintiff participated in this weapons qualification each year since becoming an armed guard in the mid-1990s. Plaintiff Dep. 52:13-18. All Securitas employees on site, including, but not limited to, all of the full-time sergeants, were required to take the same qualification test and qualify on the same weapons. Plaintiff Dep. 57:22-58:5; 58:18-20. In May 2007, Plaintiff failed three attempts to qualify on the .308-caliber rifle. Plaintiff Dep. 59:15-20; 81:17-19; 86:12-14; 90:19-21.

Plaintiff testified in her deposition that her instructor loaded her rounds and she stated it is a rule that the instructors do not load the rounds during qualifications. Plaintiff Dep. 60:14-61:20. However, she could not point to a specific, written rule and admitted that she had never seen any sort of instructions or manuals on how the qualifications are to run. Plaintiff Dep. 60:19-22. May 2007 was not the first time Plaintiff had been required to take a weapons qualification test or qualify specifically on the .308-caliber rifle. Plaintiff Dep. 57:14-17. Plaintiff tested and qualified on the .308-caliber rifle the year prior to May 2007. Plaintiff Dep. 57:1-13.

It is undisputed that failure to pass the annual qualification test on the third attempt would result in Plaintiff's employment being terminated. Plaintiff Dep. at 53:4-5; 60:5-9. Plaintiff was aware of the qualifying score needed to pass and testified that she did not achieve that score. Plaintiff Dep. 81:20-82:7. As a result of this weapon qualification failure, Plaintiff's employment was terminated. Plaintiff Dep. 86:15-17; 89:23-90:3; Plaintiff Dep. Ex. 2-3. Plaintiff never re-applied for employment at Securitas following her termination. Plaintiff Dep. 92:3-5; 98:7-8; 108:22-23; Spencer Aff. ¶ 13.

On July 31, 2007, Plaintiff filed a Charge of Discrimination with the South Carolina Human

Affairs Commission (SCHAC), generally alleging discrimination on the basis of race, sex, age and retaliation[3]. Plaintiff Dep. Ex. 4 and 5 (attached collectively as Ex. B to Defendant's Motion). Plaintiff asserts that she was harassed and intimidated for no reason on several occasions. Plaintiff Dep. Ex. 4. She also states "I am aware of similarly situated employees that were allowed to continue in their position after failing the range. They were allowed to go to the next available class upon passing and return to work. I was restricted from attending the make-up classes and not given a reason why." Plaintiff Dep. Ex. 4. However, in her deposition, Plaintiff admitted that she knows of no one who was not terminated after failing three attempts on a weapons qualification. Plaintiff Dep. 72:4-7; 72:22-73:1.

Plaintiff filed this action on April 17, 2008.

## III.　STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for

---

[3]In 2005, Plaintiff submitted to human resources a memorandum in which she raised concerns about the interview and decision-making process for the full time sergeant position. Plaintiff Dep. Ex. 5. She complained about being required to complete the ninety day program before she could be promoted to full-time sergeant. Plaintiff Dep. Ex. 5. In her Charge of Discrimination, she states that her termination was in retaliation for previous opposition to unfair employment practices. Plaintiff Dep. Ex. 4. However, as stated above in footnote 1, Plaintiff did not bring a separate cause of action for retaliation and has not pursued it in her Response to the Motion for Summary Judgment.

trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV. DISCUSSION

### A. Failure to Exhaust Administrative Remedies and Timeliness of Charge

Defendant argues that, to the extent Plaintiff is claiming race, age, or gender discrimination with respect to the promotion process in 2005, she has failed to exhaust her administrative remedies for such claims. The scope of a private action is defined by the scope of the administrative charge from which it arises and from any findings that arise out of the investigation of the charge. EEOC v. General Elec. Co., 532 F.2d 359, 365 (4th Cir. 1976). Therefore, only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996) (sexual harassment and discriminatory pay and benefits claims dismissed because EEOC charge alleged only a failure to promote); Dennis v. County of Fairfax, 55 F.3d 151, 156-57 (4th Cir. 1995) (hiring, promotion, and training discrimination claims dismissed where EEOC charge alleged only discriminatory discipline).

In the SCHAC charge that Plaintiff filed on July 31, 2007, Plaintiff states, inter alia, "I had been employed with Respondent since July 1991, with no problems until September 2005 when I applied for a promotion." Plaintiff Dep. Ex. 4 (attached as Exhibit B to Defendant's Motion). She also complains "I was harassed and intimidated on several occasions, the latest being May 11, 2007." Id. Defendant argues that Plaintiff's 2007 SCHAC charge fails to allege any discriminatory actions on the basis of race, gender, or age as related to the promotion process in 2005, but even if it does, the allegations are untimely. "Title VII and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., provide a maximum of 300 days from the occurrence of an alleged

discriminatory event for a claimant to file a timely charge with the EEOC, if she first instituted proceedings with a state or local agency, 42 U.S.C. § 2000e-5(e)(1); 26 U.S.C. § 26(d)(2)." Evans v. Technologies Applications and Service Co., 80 F.3d 954, 962 (4th Cir. 1996).

Defendants argue that Plaintiff's charge, filed on July 31, 2007, could present allegations only as far back as October 4, 2006, necessarily excluding any claims surrounding the promotion process in 2005. Plaintiff argues that Defendant engaged in a continuing pattern of discriminatory behavior and that at least one act falls within the appropriate time period. The Supreme Court has stated that "a charge alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002). However, the Complaint only contains allegations regarding Plaintiff's application for a promotion in 2005 and her subsequent termination in 2007. Plaintiff does not allege a continuing pattern of discrimination or a hostile work environment nor does she present evidence of such. The alleged discrimination regarding the 2005 promotion process is a discrete act and "an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred." Williams v. Giant Food Inc., 370 F.3d 423, 429 (4th Cir.2004). Accordingly, the 2005 promotion claim is time-barred under Title VII and the ADEA.[4]

### B. Title VII's National Security Exemption

Title VII provides a national security exemption, which divests the district court of

---

[4]Even if the 2005 promotion claim was not time-barred it would still fail to survive summary judgment because Plaintiffs fails to establish a prima facie case of race, gender or age discrimination. Anderson v. Westinghouse Savannah River Company, 406 F.3d 248, 268 (4th Cir.2005) (setting forth prima facie requirements for failure to promote claim).

jurisdiction over Title VII claims involving employment decisions made in the interest of national security. Jones v. Ashcraft, 321 F.Supp.2d 1, 5 (D.D.C. 2004). Specifically, 42 U.S.C. § 2000e-2(g) provides in pertinent part,

> [I]t shall not be an unlawful employment practice for an employer to fail or refuse to hire and employ any individual for any position ... if
>
> (1) the occupancy of such position ... is subject to any requirement imposed in the interest of the national security of the United States under any security program in effect pursuant to or administered under any statute of the United States or any Executive order of the President; and
>
> (2) such individual has not fulfilled or has ceased to fulfill that requirement.

Defendant argues that this exemption bars Plaintiff's claims.

The Robinson Nuclear Plant is licensed via the Atomic Energy Act of 1954. Defendant is required to follow the security program requirements established by the United States Nuclear Regulatory Commission (NRC) in Title 10 of the Code of Federal Regulations.[5] Spencer Aff. ¶ 4 (attached as Exhibit C to Defendant's Motion); 10 C.F.R. Part 73, Appendix B. Defendant's security requirements also fall within the purview of the Department of Homeland Security. Id. ¶ 6. Because it is undisputed that Plaintiff did not successfully complete her weapons qualification in May of 2007, Defendant argues that her termination based upon this fact is not reviewable by this court.

Plaintiff argues that the national security exemption does not apply because, per 10 C.F.R. Part 73, Appendix B, Section IV, she was only required to qualify on "assigned weapons" and because the .308-caliber rifle was not carried on a regular basis, it was not an assigned weapon. However, Tena Spencer avers that, in 2007, the .308-caliber rifle was an assigned weapon. Spencer

---

[5]Defendant has not provided any specific safeguards information, citing 10 C.F.R. § 73.21, which provides generally that the NRC requires that safeguards information not be disclosed.

Aff. ¶ 7 (attached as Exhibit G to Defendant's Reply).

Defendant argues generally that its annual weapons qualifications are regulated by the NRC, via the Code of Federal Regulations, in an effort to uphold national security measures required by the Atomic Energy Act. However, this generalization is insufficient to show that qualifying on the .308-caliber rifle is a "requirement imposed in the interest of national security" as required by the national security exemption. Further, Defendant fails to show that its requirement that its employees qualify on the .308-caliber rifle is "pursuant to or administered under any statute of the United States or any Executive Order of the President." Although Defendant sets forth that it is required to follow the security program requirements established by the NRC in Title 10 of the Code of Federal Regulations, the record is devoid of any evidence showing that the specific requirement regarding the .308-caliber rifle is pursuant to the requirements set forth in the CFR. Accordingly, Defendant fails to present sufficient evidence to establish that the national security exemption applies in this case. Therefore, its Motion for Summary Judgment on this issue should be denied

### C. Claims of Discrimination

Defendant next argues that Plaintiff fails to establish discrimination based upon race, gender or age. Race and gender discrimination claims are governed by Title VII. Age discrimination claims are governed by the ADEA. Under the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[6], the plaintiff has the initial burden of demonstrating a prima facie case of discrimination. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th

---

[6]The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Cir. 2002). In order to prove a prima facie case of discriminatory discharge, Plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for her position and her job performance was satisfactory; (3) she was terminated; and (4) other employees who are not members of Plaintiff's protected class were retained under apparently similar circumstances. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir 2004) (Title VII); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-12 (1996) (ADEA). The fourth element can also be satisfied by showing other circumstances giving rise to a reasonable inference of unlawful discrimination. Id.

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the denial of the promotion. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. Reeves, 530 U.S. at 143. On Plaintiff's Title VII claims, she must show only that race or gender discrimination was a motivating factor in her termination, but on her ADEA claim, Plaintiff must show that age discrimination was the motivating factor. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (Title VII); Gross v. FBL Financial Services, Inc., – U.S.–, 129 S.Ct. 2343, 2350 (2009). Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant

intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

Defendant does not dispute that Plaintiff is a member of a protected class or that she was terminated. Defendant argues that Plaintiff cannot establish a prima facie case of discrimination because, by failing the .308-caliber rifle test, she was not qualified for the position and all other employees who failed to qualify on the .308-caliber rifle were fired as well.

It is undisputed that Plaintiff failed to qualify on the .308-caliber rifle. Plaintiff concedes that successfully completing weapons qualification each year was necessary to stay employed with Defendant. Plaintiff Dep. 60:8-9; 194:6-9; P. Dep. Ex. 3. This qualification had occurred each year since Plaintiff had become an armed guard in the mid-1990s and the weapons tested in May 2007 were similarly tested the year before. Id. at 52:13-18; 56:25-57:20; P. Dep. Ex. 3. Plaintiff testified she was aware that a third failed attempt on a single weapon during any qualification period would result in termination. Id. at 53:4-5; 60:5-9. Plaintiff also testified that in May 2007, she failed three attempts on the .308-caliber rifle qualification. Id. at 59:15-20; 81:17-82:7; 86:12-14.

Plaintiff testified that "I qualified on all the weapons that were carried on a daily basis, and that weapon was not carried by anybody." Id. at 90:8-10. However, she does not dispute that the .308-caliber rifle was assigned for normal or contingency operations. Weapons may be assigned without being carried on a daily basis. Spencer Aff. ¶ 6 (attached as Ex. G to Defendant's Reply). Furthermore, she does not dispute that all armed security officers were required to qualify with the .308-caliber rifle in 2007. The NRC requires that "security personnel be requalified at least every 12 months to perform assigned security-related job tasks and duties for both normal and contingency

operations." 10 C.F.R. Part 73, Appendix B (Criteria, Section II.E.) (emphasis added). Pursuant to the NRC-approved training and qualification plan, all of Defendant's armed positions at the Robinson Nuclear Plant in 2007 had to qualify on any weapons which may be used in contingency operations. Spencer Aff. ¶¶ 4, 5, 7, 8. In 2007, the .308-caliber rifle was an assigned weapon for contingency operations. Id. ¶¶ 7-8. Accordingly, all of Defendant's armed security force had to qualify on the .308-caliber rifle in 2007. Id. ¶ 8. Plaintiff's argument that she was not required to qualify on the .308-caliber rifle is without merit.

Defendant also argues that Plaintiff fails to meet the fourth requirement of the prima facie case, which requires her to show essentially that employees outside her protected classes, i.e., those that are male, not black, and under the age of forty, were not terminated after a third weapons failure. In fact, Plaintiff testifies that she is not aware of anyone who was not terminated after failing three attempts to qualify on the assigned weapons. Plaintiff Dep. 72:4-7; 72:22-73:1. She verifies that both male and female employees, older and younger employees, and employees of all racial backgrounds were terminated for failing to qualify on a weapon. Id. at 74:5-8, 14; 75:9-11.[7] When asked directly if she believed her termination was based upon her gender, she answered "no." Id. at

---

[7]In her deposition, Plaintiff names other employees who were allowed to "come back" after failing to qualify on a weapon. Plaintiff Dep. 71:12-15; 73:13-19; 76:20-77:5. Plaintiff does not address this issue in her Response and Rule 56 does not impose upon the court a duty to sift through the record in search of evidence to support a litigant's arguments on summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 115 S.Ct. 195 (1994); Malina v. Baltimore Gas & Elec., 18 F.Supp.2d 596, 604 (D.Md. 1998); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4th Cir. 1993), cert. denied sub nom, Price v. City of Charlotte, 420 U.S. 1116 (1997). Nevertheless, Spencer avers that each of these individuals was terminated from his or her position. Spencer Aff. ¶ 15. The circumstances under which these individuals were allowed to "come back" are not in the record. However, it is undisputed that Plaintiff never reapplied for her position after being terminated. Plaintiff Dep. 92:3-5; 98:7-8; 108:22-23; Spencer Aff. ¶ 13.

165:1-3. Furthermore, Plaintiff has failed to present any evidence to support her claims of age, race or gender discrimination. In her Response, Plaintiff points to her deposition testimony wherein she stated "I got my belief [that my termination was based upon race], that if I was–of the other race that what I was complaining about would have been given consideration." Id. at 172:5-7. However, Plaintiff has presented no evidence to support her "belief" that discrimination occurred. See Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (conclusory allegations of race and sex discrimination are insufficient); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (a plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of discrimination," nor are "unsubstantiated allegations and bald assertions" concerning plaintiff's own qualifications sufficient). Plaintiff may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).

Plaintiff fails to create a prima facie case of discrimination because she has failed to present evidence sufficient to show that she was qualified for her position or that other employees outside of her protected classes were not terminated after failing to qualify on an assigned weapon. Accordingly, summary judgment is appropriate.

Assuming, arguendo, Plaintiff had established a prima facie case of discrimination, summary judgment is still appropriate because Defendant has proffered a legitimate, nondiscriminatory reason for her dismissal and Plaintiff has failed to submit evidence that the reason is merely pretext for a discriminatory reason. Defendant terminated Plaintiff's employment because she failed to qualify on the .308-caliber rifle after three attempts. Plaintiff presents no evidence to the contrary. In fact, Plaintiff states in her deposition, "I don't believe that I would have been terminated had I passed [the

weapons qualification]." Plaintiff Dep. 86:22-23. Plaintiff simply fails to present any evidence of pretext.

Assuming, arguendo, that qualifying with the .308-caliber rifle was not a requirement under the security plan (i.e., it was not an assigned weapon), there is no dispute that all armed security officers were required to qualify with the .308. In other words, even if Defendant was wrong in requiring qualification with the .308-caliber rifle, the requirement was made across the board for all armed security officers. Thus, Plaintiff was not treated any differently than similarly situated employees outside her protected classes and no evidence of pretext exists in the record presented.

It is not the Court's decision "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[8] Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998)); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280.

---

[8] "Proof that the employer's proffered reasons in unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47. "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

Because Plaintiff fails to meet her burden of presenting sufficient evidence to create an issue of fact as to discrimination, Plaintiff's Title VII and ADEA claims fail and summary judgment is appropriate.

**V.     CONCLUSION**

For the reasons set forth above, it is recommended that Defendant's Motion for Summary Judgment (Document # 24) be **GRANTED** and this case be dismissed in its entirety.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

December 2, 2009  
Florence, South Carolina

**The parties' attention is directed to the important notice on the attached page.**